# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| SUSAN R. PEASE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CHRISTIAN BRIGGS and | § | |
| BRIGGS VENTURES, INC., | § | Case No: 1:12-CV-000851-SS |
|     Defendants and Third-Party | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TODD GRIFFITHS and | § | |
| CT GROUP, INC., | § | |
|     Third-Party Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

Table of Authorities.................................................................................................................ii

**I.** Basis of Motion .............................................................................................................. 1

**II.** Factual Background ........................................................................................................ 1

**III.** Argument and Authorities ............................................................................................ 4

   **A.** Summary judgment standard. .................................................................................... 4

   **B.** Plaintiff's actual damages cannot exceed $54,000.................................................... 5

      **1.** At most, Plaintiff's economic damages are $54,000. ........................................... 5

      **2.** Plaintiff cannot recover damages for mental anguish.......................................... 6

      **3.** Plaintiff's attorneys' fees are limited by her failure to mitigate. ....................... 7

   **C.** Plaintiff's contract, money had and received, and conversion claims are moot. ........... 8

   **D.** Plaintiff's claim for breach of fiduciary duty fails as a matter of law. .............................. 9

   **E.** Defendants did not owe Plaintiff a duty of good faith and fair dealing. ........................ 11

   **F.** Plaintiff does not have a valid fraud claim. .................................................................. 13

      **1.** Defendants did not make any false representations........................................... 14

      **2.** Plaintiff did not rely on or suffer damages from any concealed facts. ..................... 16

   **G.** Plaintiff's DTPA claim fails for the same reasons as her other claims. .......................... 17

   **H.** Defendants cannot be liable for conspiracy. ................................................................ 18

   **I.** Texas does not recognize a cause of action for unjust enrichment................................ 19

   **J.** Plaintiff's potential exemplary damages should be limited to $200,000...................... 19

**IV.** Conclusion ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Air Liquide Am. Corp. v. U.S. Army Corps of Eng'rs*,
359 F.3d 358 (5th Cir. 2004) ........................................................................................................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................................. 4

*Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*,
725 S.W.2d 165 (Tex. 1987) .......................................................................................................12

*Associated Indem. Corp. v. CAT Contracting, Inc.*,
964 S.W.2d 276 (Tex. 1998) ................................................................................................. 10, 11

*Bank One, Texas, N.A. v. Stewart*,
967 S.W.2d 419 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) .................................11

*Bay Colony, Ltd. v. Trendmaker, Inc.*,
121 F.3d 998 (5th Cir. 1997) .....................................................................................................16

*Bulko v. Moran Stanley DW, Inc.*,
450 F.3d 622 (5th Cir. 2006) ............................................................................................. 4

*In re Carolin Paxson Adver., Inc.*,
938 F.2d 595 (5th Cir. 1991) ............................................................................................. 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................. 4

*City of Midland v. O'Bryant*,
18 S.W.3d 209 (Tex. 2000) .......................................................................................................13

*Doss v. Homecoming Fin. Network, Inc.*,
210 S.W.3d 706 (Tex. App.—Corpus Christi 2006, pet. denied)...............................................19

*In re Easley*,
No. 10-32981-H3-13, 2012 WL 567031 (Bankr. S.D. Tex. Feb. 21, 2012)............................. 7

*Edwards v. Mid-Continent Office Distribs., L.P.*,
252 S.W.3d 833 (Tex. App. – Dallas 2008, pet. denied) ................................................. 8

*Elliott v. Tilton*,
89 F.3d 260 (5th Cir. 1996).......................................................................................................18

*English v. Fischer*,
660 S.W.2d 521 (Tex. 1983) ..............................................................................................12

*In re Estate of Kuykendall*,
206 S.W.3d 766 (Tex. App.—Texarkana 2006, no pet.) ...................................................14

*Fireman's Fund Ins. Co. v. Murchison*,
937 F.2d 204 (5th Cir. 1991) .............................................................................................12

*First Nat'l Bank of Commerce v. Monco Agency Inc.*,
911 F.2d 1053 (5th Cir. 1990) ........................................................................................... 4

*Hall v. Resolution Trust Corp.*,
958 F.2d 75 (5th Cir. 1992) ......................................................................................... 12, 13

*Hilliard v. Ferguson*,
30 F.3d 649 (5th Cir. 1994) ...............................................................................................18

*Hoffman v. L & M Arts*,
774 F. Supp. 2d 826 (N.D. Tex. 2011) ...............................................................................19

*Hoggett v. Brown*,
971 S.W.2d 472 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ........................ 11, 13

*Holstein v. City of Chicago*,
29 F.3d 1145 (7th Cir. 1994) ............................................................................................ 9

*J.P. Morgan Chase Bank, N.A. v. Texas Contract Carpet, Inc.*,
302 S.W.3d 515 (Tex. App.—Austin 2009, no pet.) ......................................................... 9

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) ..........................................................................................8, 9

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ............................................................................................ 4

*Masters v. Wells Fargo Bank S. Cent., N.A.*,
No. A-12-CA-376-SS, 2013 WL 3713492 (W.D. Tex. July 11, 2013) ........................... 8

*Meadows v. Hartford Life Ins. Co.*,
492 F.3d 634 (5th Cir. 2007) .............................................................................................18

*Meyer v. Cathey*,
167 S.W.3d 327 (Tex. 2005) .............................................................................................11

*Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*,
403 S.W.3d 451 (Tex. App. – Houston [1st Dist.] 2013, pet. filed) ............................... 8

*Parkway Co. v. Woodruff,*
    901 S.W.2d 434 (Tex. 1995) ............................................................... 6, 7, 18

*Piazza's Seafood World, LLC v. Odom,*
    448 F.3d 744 (5th Cir. 2006) ............................................................... 4

*Prime Prods., Inc. v. S.S.I. Plastics, Inc.,*
    97 S.W.3d 631 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ............................. 10, 13

*Schlumberger Tech. Corp. v. Swanson,*
    959 S.W.2d 171 (Tex. 1997) ............................................................... 11

*Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter,*
    607 F.3d 1029 (5th Cir. 2010) ............................................................ 16

*Stanford v. Dairy Queen Prods. of Tex.,*
    623 S.W.2d 797 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ................................... 10

*Thibodeaux v. Fibreboard Corp.,*
    706 F.2d 728 (5th Cir. 1983) ............................................................. 5

*Thibodeaux v. Vamos Oil & Gas Co.,*
    487 F.3d 288 (5th Cir. 2007) ............................................................. 4

*Turner v. Baylor Richardson Med. Ctr.,*
    476 F.3d 337 (5th Cir. 2007) ............................................................. 4

*United Mobile Networks, L.P. v. Deaton,*
    939 S.W.2d 146 (Tex. 1994) .............................................................. 8

*United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.,*
    414 F.3d 558 (5th Cir. 2005) ............................................................. 14

*Walker v. Fed. Kemper Life Assur. Co.,*
    828 S.W.2d 442 (Tex. App.—San Antonio 1992, writ denied) ................................... 9

*Walker v. Nationwide Prop. & Cas. Ins. Co.,*
    No. 1:12-CV-1124-JRN, 2014 WL 171246 (W.D. Tex. Jan. 6, 2014) ............................... 5

*Wellogix, Inc. v. Accenture, LLP,*
    788 F. Supp. 2d 523 (S.D. Tex. 2011) ..................................................... 13

*Whitehouse Bros. v. S.H. Abbott & Son,*
    228 S.W. 599 (Tex. Civ. App.—Dallas 1921, no writ) ....................................... 10

*Worthington Corp. v. Consol. Aluminum Corp.,*
    544 F.2d 227 (5th Cir. 1976) ............................................................. 5

**Statutes**

Tex. Bus. & Comm. Code § 17.50(a) ...............................................................................17

Tex. Civ. Prac. & Rem. Code § 17.50(b)(1) ....................................................................18

Tex. Civ. Prac. & Rem. Code § 33.012(b) ........................................................................ 5

Tex. Civ. Prac. & Rem. Code § 41.008(b) ................................................................. 19, 20

Tex. Civ. Prac. & Rem. Code § 41.008(c)(11) ................................................................20

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................... 4

Defendants Christian Briggs ("Briggs") and Briggs Ventures, Inc. ("BVI" and together with Briggs, "Defendants") file their Motion for Summary Judgment (the "Motion") and would show the Court as follows:

## I.     BASIS OF MOTION

This case has become nothing more than attorney-driven litigation. Defendants have offered Plaintiff the full amount of her potential damages (including a refund of the commission she agreed to pay them) and over $20,000 in attorneys' fees. A trial would unnecessarily utilize the Court's and the parties' time. If Plaintiff believes she is entitled to a greater amount of attorneys' fees, this issue can be resolved by the procedure set forth in Local Court Rule CV-7(j).

The essence of Plaintiff's complaint is that Defendants defrauded her when they represented that Defendant BVI could sell her rare coin for approximately $100,000 when the coin was worth more than that amount. Plaintiff's claims fail, however, as the parties' stipulated expert on rare coin values testified that the coin was worth approximately $100,000 to $105,000 when BVI sold it for $105,000 in 2010. Plaintiff has received $51,000 to date relating to the coin. Defendants have offered her the difference between the $105,000 sales price and the $51,000 she received ($54,000) and $21,000 in attorneys' fees. Defendants are also not seeking to offset this amount by the commission Plaintiff agreed to pay BVI for selling the coin. Because the evidence establishes that Defendants did not defraud Plaintiff and have offered her the full amount of her potential damages, Defendants should be granted summary judgment on Plaintiff's claims and this matter should be resolved by attorneys' fees affidavit if necessary.

## II.     FACTUAL BACKGROUND

Plaintiff is a wealthy individual whose investment portfolio includes a wide variety of bonds, individual stocks, and domestic and international mutual funds. (*See* Ex. A-1 at 1-2.)[1] Plaintiff and her husband owned (and later sold) Linn County Bank in Kansas. (*See* Ex.

---

[1]     A true and correct copy of "Information regarding the Investment Holdings for Susan Pease in 2006 and 2007" is attached as Exhibit A-1 to the Declaration of Attorney

B ("Pease Dep.") at 121:10-122:24.)[2] Plaintiff helped manage all three of the bank locations they owned, and over the course of her thirty years in banking, she served as Executive Vice President, Secretary to the Board, and President of the holding company. (*Id.* at 120:20-24.) Plaintiff and her husband began collecting coins in the 1970s and invested in rare coins (both individually and through a revocable trust they established). (*Id.* at 127:14-24, 128:16-20.) One of those coins in particular gives rise to this litigation.

Plaintiff owned a rare 1893 CC Morgan $1 coin (the "Coin"). (See Plaintiff's Second Amended Complaint and Jury Demand [ECF 63] ("Complaint") ¶ 6.) Plaintiff alleges that she gave Defendants the Coin in 2006 so that they could market it and sell it. (*See id.* at ¶ 9.) Defendant BVI sold the Coin—on Plaintiff's behalf—to third-party Defendant Todd Griffiths ("Griffiths") in August 2010 for $105,000. (*See* Pease Dep. at 95:5-8.) Because Griffiths and his company, CT Group, Inc., owed Briggs a debt, Griffiths agreed to pay BVI the purchase price of the Coin—as repayment of his debt—and also pay Plaintiff for the Coin. (*See* Ex. C ("Briggs Dep.") at 87:13-25.)[3] But Griffiths did not fulfill his promise to pay Plaintiff. (*See* Pease Dep. at 71:2-19.)

A few weeks after purchasing the Coin, Griffiths called Plaintiff and pretended he did not know that she was the owner of the Coin he had purchased from BVI. (*See id.* at 17:20-18:12.) Plaintiff states that when Griffiths called her, she told him she had given Briggs the Coin to sell. (*Id.*) Griffiths told her he could sell the Coin immediately for $80,000 if Plaintiff would pay him a commission. (*Id.*) Griffiths did not, however, tell Plaintiff he had already purchased the Coin from BVI and owed her $105,000 for the Coin. (*Id.,* 83:17-84:1)

---

Alexander Brauer ("Brauer Declaration") attached hereto as Exhibit A and incorporated by reference.

[2]    A true and correct copy of excerpts from the court reporter's transcript of the Videotaped Deposition of Susan R. Pease is attached hereto as Exhibit B and incorporated by reference.

[3]    A true and correct copy of excerpts from the court reporter's transcript of the Oral and Videotaped Deposition of Christian Briggs is attached hereto as Exhibit C and incorporated by reference.

Instead, he feigned ignorance, waited a little while, and called Plaintiff back the same day. (*Id.* at 69:1-3.)

During the second phone call, Griffiths told Plaintiff he had contacted Briggs and that Briggs would buy the Coin from her for $80,000.  (*Id.* at 69:11-17; Ex. D ("Griffiths Dep.") at 33:13-34:21.)[4]   Plaintiff authorized Griffiths to make the sale and pay her $77,500— $80,000 minus a $2,500 commission.  (Pease Dep. at 69:21-25; Griffiths Dep. at 41:15-24.) Although Griffiths agreed to send Plaintiff the money, he never did.  (Pease Dep. at 71:9-15; Griffiths Dep. at 42:8-43:16.)   Griffiths's secretary even told Plaintiff that she would be sending the money to Plaintiff when Plaintiff spoke to her.  (Pease Dep. at 71:17-19.)

Although Griffiths never paid Plaintiff for the Coin, he took possession of it and sold it to Brian Hendelson.  (*See* Griffiths Dep. at 186:8-10.)  After buying the Coin from Griffiths, Hendelson obtained a CAC sticker for it.  (*Id.* at 65:23-66:2.)   The CAC designation is "important" because it "validates the grade of the coin," makes the coin "more attractive," and "opens up a broader market" for the coin, thereby making the coin "more valuable." (*Id.* at 66:8-67:19.)

The following year, Hendelson listed the Coin for auction.  (*See* Pease Dep. at 86:20-87:1.)  When Pease found out the Coin was going to be auctioned, she contacted the auction house, told them she owned the Coin, and demanded that they stop the auction.  (*Id.* at 88:11-18.)  Plaintiff then changed her mind and agreed for the auction to continue.  (*Id.* at 88:22-89:2.)  The Coin sold for $160,000 plus a buyer's premium of 15%—making the final price to the buyer $184,000.  (*Id.* at 34:6-8; Griffiths Dep. At 84:3-12.)

The auction house held the proceeds from the Coin sale at Plaintiff's demand while ownership of the Coin was determined.  (Pease Dep. at 89:3-8.)  Later, Plaintiff released her claim to the proceeds in exchange for $51,000.  (*See id.* at 37:3-17.)  Plaintiff now seeks to recover economic damages from Defendants based her assertion that the Coin was worth

---

[4]     A true and correct copy of excerpts from the court reporter's transcript of the Videotaped Deposition of David Todd Griffiths, Volume II is attached hereto as Exhibit D and incorporated by reference.

$184,000 when she owned it, but Defendants misrepresented its value to be approximately $100,000. She also seeks to recover attorneys' fees and damages for mental anguish.

### III.     ARGUMENT AND AUTHORITIES

**A.    Summary judgment standard.**

Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, and affidavits, "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bulko v. Moran Stanley DW, Inc.*, 450 F.3d 622, 624 (5th Cir. 2006). A genuine dispute as to a material fact exists with respect to a plaintiff's claim when the evidence is such that a reasonable jury could return a verdict for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence in the summary judgment record, the Court must "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

The Court may also grant judgment based on the absence of evidence supporting Plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "need not *negate* the elements of the nonmovant's case" by providing affidavits or other evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). All it must do is "inform[] the district court of the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once this burden is satisfied, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). The plaintiff must do more than just raise "'some metaphysical doubt' as to the material facts" to satisfy this burden. *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 295 (5th Cir. 2007). And "[a] mere scintilla of evidence in support of the plaintiff's position is insufficient to survive summary judgment." *First Nat'l Bank of Commerce v. Monco Agency Inc.*, 911 F.2d 1053, 1057 (5th Cir. 1990).

**B.** **Plaintiff's actual damages cannot exceed $54,000.**

A motion for summary judgment may be used to determine the maximum amount of damages available on a claim. *See, e.g.*, *Worthington Corp. v. Consol. Aluminum Corp.*, 544 F.2d 227, 234-35 (5th Cir. 1976); *Walker v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:12-CV-1124-JRN, 2014 WL 171246, at *4 (W.D. Tex. Jan. 6, 2014) ("the maximum amount that Plaintiffs may recover under their claim for recovery for alleged foundation damage is $37,620.00"). Here, Defendants ask the Court to limit Plaintiff's actual damages to $54,000. Defendants also ask the Court to rule that it was neither reasonable nor necessary for Plaintiff to incur additional attorneys' fees pursuing her breach of contract or DTPA claims after Defendants offered to pay her actual damages for these claims.

**1.** **At most, Plaintiff's economic damages are $54,000.**

Plaintiff's claims are based on the assertion that Defendants were required to pay her $105,000 (minus a commission) when Griffiths bought the Coin from BVI in August 2010.[5] Thus, the maximum amount of economic damages she can recover from Defendants (ignoring the commission owed to Defendants) is $54,000—the difference between the amount Griffiths paid and the amount Plaintiff has been paid for the Coin.

It is undisputed that Griffiths paid BVI $105,000 for the Coin in August 2010. (*See* Pease Dep. at 38:12-14.) It is also undisputed that Plaintiff has received $51,000 for the Coin. (*See id.* at 37:3-7.) Thus, the most Plaintiff can recover in economic damages is $54,000. *See Thibodeaux v. Fibreboard Corp.*, 706 F.2d 728, 729 (5th Cir. 1983) ("Under Texas law, an injured plaintiff is entitled to only one satisfaction for the full amount of his damages, hence a non-settling defendant may elect to subtract the amount paid by others in settlement of common damages from any judgment award against him."); *see also* Tex. Civ. Prac. & Rem. Code § 33.012(b) ("If the claimant has settled with one or more persons,

---

[5] Although Plaintiff's testimony and other evidence show that Griffiths was required to pay Plaintiff the money for the Coin—not BVI—there is a factual dispute regarding who was supposed to pay Plaintiff. Accordingly, Defendants are not seeking summary judgment on the issue of who owed Plaintiff the money.

the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements.").

### 2. Plaintiff cannot recover damages for mental anguish.

Based on her verified interrogatory responses, Plaintiff is not entitled to any damages for mental anguish. The Texas Supreme Court confirmed the standard for compensable mental anguish in *Parkway Co. v. Woodruff*:

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

901 S.W.2d 434, 444 (Tex. 1995) (internal quotation marks omitted).

In Interrogatory No. 8, Plaintiff was asked to "identify all symptoms . . . of the alleged mental anguish" for which she seeks recovery in this case. (*See* Ex. A-2 at 4.)[6] In her response, Plaintiff alleged she has "suffered anxiety, frustration, embarrassment and worry." (*Id.*) Plaintiff could not state when her mental anguish began. (*Id.* at 3 (in response to Interrogatory No. 1, Plaintiff explained, "[t]he anxiety and frustration [she] experienced cannot be pinpointed as it began slowly").) Plaintiff also admits she did not seek medical treatment for her purported mental anguish and that she was not prescribed any medication to help with her symptoms. (*Id.* (Plaintiff's responses to Interrogatory Nos. 2-5).) In fact, Plaintiff's symptoms were so mild she did not even require over-the-counter medication to cope. (*See id.* at 3-4 (Plaintiff's responses to Interrogatory Nos. 6-7).) This is not surprising given that the Coin did not represent a significant portion of her wealth but was rather merely one of her numerous investments and assets. (*See* Ex. A-1 at 1-2.)

---

[6] A true and correct copy of Plaintiff, Susan R. Pease's Answers to Defendant's First Set of Interrogatories is attached as Exhibit A-2 to the Brauer Declaration and incorporated by reference.

In determining whether mental anguish damages are available, the Court "must distinguish between shades and degrees of emotion . . . because evidence of lesser reactions cannot support an award of mental anguish damages." *Woodruff*, 901 S.W.2d at 444. The legal standard generally requires a plaintiff to "introduce[] direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Id.*

Here, there is no evidence that Plaintiff suffered "'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Id.* Instead, the evidence shows that Plaintiff—at worst—"suffered anxiety, frustration, embarrassment and worry." (Ex. A-2 at 4.) She did not suffer a mental sensation of pain requiring counseling, medical treatment, or even over the counter medication. (*See id.* at 3-4.) Although her Interrogatory responses indicate Plaintiff "felt anger, frustration, or vexation . . . they do not support the conclusion that these emotions rose to a compensable level." *Woodruff*, 901 S.W.2d at 445. Plaintiff's request for mental anguish damages should, therefore, be denied.

### 3.    Plaintiff's attorneys' fees are limited by her failure to mitigate.

Plaintiff should not be allowed to collect any attorneys' fees for pursuing her breach of contract or DTPA claims that she incurred after May 1, 2014 because Defendants offered to pay her the full amount of her economic damages ($54,000)—plus $21,000 in attorneys' fees—on that date. (*See* Ex. A-3)[7] Even if Plaintiff claims she was entitled to more than $21,000 in attorneys' fees, the "only issue left for resolution at that time was the amount of damages." *In re Easley*, No. 10-32981-H3-13, 2012 WL 567031, at *2 (Bankr. S.D. Tex. Feb. 21, 2012). Thus, any damages incurred after that date consist purely of attorneys' fees incurred in the pursuit of attorneys' fees. But because Plaintiff "had a duty to mitigate damages," it was "objectively unreasonable" for her lawyers to "continue[] aggressive discovery and litigation tactics" after they received the May 1, 2014 offer. *Id.*

---

[7]     A true and correct copy of the May 1, 2014 letter is attached as Exhibit A-3 to the Brauer Declaration and incorporated by reference.

Because Plaintiff's economic damages cannot exceed $54,000 and she has not suffered compensable mental anguish, the Court should order that the maximum amount of actual damages Plaintiff may recover on her claims is $54,000. Similarly, because Plaintiff had a duty to mitigate her damages, she is not entitled to recover any attorneys' fees that were incurred after May 1, 2014.

**C.**     **Plaintiff's contract, money had and received, and conversion claims are moot.**

An essential element of Plaintiff's breach of contract, money had and received, and conversion claims is that Plaintiff suffered actual damages. *Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 464 (Tex. App. – Houston [1st Dist.] 2013, pet. filed) ("Damages are an essential element of a breach of contract claim."); *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App. – Dallas 2008, pet. denied) ("To prove the claim [for money had and received], a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him."); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 148 (Tex. 1994) ("A plaintiff must prove damages before recovery is allowed for conversion . . . [and] damages are limited to the amount necessary to compensate the plaintiff for the actual losses or injuries sustained as a natural and proximate result of the defendant's conversion."). Here, however, Plaintiff's claims are moot because Defendants offered to pay the full amount of her actual damages. (*See* Ex. A-3); *cf. Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-376-SS, 2013 WL 3713492, *4 (W.D. Tex. July 11, 2013) ("The Fifth Circuit holds an unaccepted offer fully satisfying a claim does moot the claim, and this Court is bound to apply this rule.").

Plaintiff will likely argue that the settlement offer did not moot her breach of contract claim because Defendants did not offer to pay the full amount of her attorneys' fees. This argument should be rejected. In *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 502 (5th Cir. 2005), the plaintiff argued that his individual claims were not moot because the settlement offer did not include prejudgment interest. The Fifth Circuit rejected the assertion because the award of prejudgment interest was "up to the district court's discretion." *Id.* Moreover, this Court had previously determined that prejudgment interest

was not warranted because the delay in payment was caused by the plaintiff's own conduct. *See id.* at 503. In the same way, Plaintiff should not be able to keep her breach of contract claim alive based on the fact that she is incurring additional attorneys' fees. Any such damages are self-inflicted because Plaintiff hopes to obtain a windfall at trial. Such fees are neither reasonable nor necessary and, therefore, cannot be recovered under Texas law. Thus, Plaintiff's claims for breach of contract, money had and received, and conversion should be disposed of now rather than proceed to trial. *Cf. Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (plaintiff "may not spurn this offer of all the damages he is owed and proceed to trial").

D.     <u>**Plaintiff's claim for breach of fiduciary duty fails as a matter of law.**</u>

The Court should dismiss Plaintiff's cause of action for breach of fiduciary duty because there was no fiduciary relationship between Plaintiff and Defendants as a matter of law. Plaintiff's fiduciary duty claim is premised on a principal-agent theory of liability. (*See* Compl. ¶ 40.) Plaintiff claims that when she "entrust[ed]" BVI with the Coin, Briggs— either "individually or in his representative capacity with BVI"—became her "agent." (*Id.*) This "agency" purportedly created "a personal, confidential and fiduciary business relationship" between Plaintiff and Defendants that still exists today. (*Id.*) The uncontroverted evidence, however, proves that no agency relationship existed.

Two elements are required for a principal-agent relationship to exist under Texas law: (1) the agent must act on behalf of the principal; and (2) the agent must be subject to the principal's control. *J.P. Morgan Chase Bank, N.A. v. Texas Contract Carpet, Inc.*, 302 S.W.3d 515, 525 (Tex. App.—Austin 2009, no pet.). "Both elements are required; 'the absence of one will prevent the conclusion that an agency relationship exists.'" *Id.* In this case, the evidence shows that Defendants were not subject to Plaintiff's control.

To demonstrate control, a plaintiff must provide evidence that he has "the right to control both the means and the details of the process by which the alleged agent is to accomplish his task." *In re Carolin Paxson Adver., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991); *accord Walker v. Fed. Kemper Life Assur. Co.*, 828 S.W.2d 442, 452 (Tex. App.—San Antonio

1992, writ denied). In this case, Plaintiff had no control over how Defendants went about marketing and selling the Coin. (*See* Pease Dep. at 64:20-65:14 (Plaintiff lacked the power to control who BVI sold the Coin to, when to make (or not make) sales calls, or how to market the Coin).) This lack of control defeats Plaintiff's assertion that an agency relationship existed. *See Air Liquide Am. Corp. v. U.S. Army Corps of Eng'rs*, 359 F.3d 358, 363 (5th Cir. 2004) ("for an agency relationship, the agent must be under the control of the principal; 'even though one acts for and in behalf of another, if he is not under that other person's control, the relation of agency does not exist.'"). Just as independent contractors are not agents under Texas law, Defendants did not have an agency relationship with Plaintiff. *See Stanford v. Dairy Queen Prods. of Tex.*, 623 S.W.2d 797, 801 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ("an independent contractor may act for and in behalf of another, but since he is not under that other person's control, the relation of agency does not exist.").

When Plaintiff "entrust[ed] Briggs with the possession of the 1893 coin for sale to an arm's-length purchaser for its market value," she created a consignment or bailment-for-sale relationship—not an agency relationship. *See, e.g.*, *Whitehouse Bros. v. S.H. Abbott & Son*, 228 S.W. 599, 601 (Tex. Civ. App.—Dallas 1921, no writ) ("if the effect of the contract is that the property is delivered from the bailor to the bailee with the understanding that the title is to remain in the bailor, and the bailee does not assume initial responsibility to pay the purchase price, it is ordinarily not a conditional sale, but is a consignment . . . ."). As such, Defendants did not owe her a fiduciary duty. *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("A bailment generally does not create a formal, fiduciary relationship between bailee and bailor."). Because Defendants did not serve as Plaintiff's agent, there was no formal fiduciary duty.

There was also no informal fiduciary relationship between the parties. Under Texas law, "[a]n informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). "But not every relationship involving a high degree of trust and confidence rises to the stature of a

fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997). Likewise, "subjective trust does not, as a matter of law, transform arm's-length dealing into a fiduciary relationship." *Id.* at 177. For an informal fiduciary relationship to arise in the business world, "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *CAT Contracting*, 964 S.W.2d at 288; *cf. Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ("A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as personal friendship.").

Here, there was no informal fiduciary duty because Plaintiff did not have a personal relationship with Briggs. Plaintiff and her husband first met Briggs in 2003 or 2004. (*See* Pease Dep. at 51:10-24.) Over the next three to four years, Plaintiff only spoke to Briggs a couple of times—when she traded her deceased husband's buffalo nickels for the Coin and when she asked BVI to sell the Coin. (*See id.* at 53:9-55:12.) These two business transactions over several years cannot form the basis of an informal fiduciary relationship. *See Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (neither working together "on prior projects" nor being "friends and frequent dining partners" for four years was sufficient to create informal fiduciary relationship); *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("Bailment Agreement did not create a formal or an informal fiduciary relationship, nor was the agreement based on an extracontractual special relationship"). Accordingly, judgment should be entered that Plaintiff take nothing on her claim for breach of fiduciary duty.

**E.  Defendants did not owe Plaintiff a duty of good faith and fair dealing.**

Plaintiff's claim for breach of the duty of good faith and fair dealing should be denied for the same reason as her fiduciary duty claim—there was no such duty under the facts of this case. Plaintiff alleges that a duty of good faith and fair dealing existed between her and Defendants because of "Briggs' superior market knowledge, Briggs' superior bargaining

position, and the confidential, special and/or fiduciary business relationships between the Parties." (Compl. ¶ 36.) But there is no evidence that a "special relationship"—which is required to create a duty of good faith and fair dealing under Texas law—existed here.

The Texas Supreme Court expressly rejected the idea that all contracts include an implied covenant of good faith and fair dealing more than thirty years ago. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983). Such a duty arises only "when a 'special relationship' exists between the parties." *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 208 (5th Cir. 1991). The circumstances under which such "special relationships" arise are limited. Texas courts have applied the duty to the relationship "between insurers and insureds, principal and agent, joint venturers and partners." *Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir. 1992). But "Texas courts have not applied this duty to ordinary contractual relationships"—such as the "supplier-distributor relationship," the "debtor-creditor relationship," or the "relationship between mortgagor-mortgagee." *Murchison*, 937 F.2d at 208-09. They have also "explicitly 'refused to overlay an implied duty of good faith and fair dealing duty in the lender-borrower relationship.'" *Hall*, 958 F.2d at 79.

For the duty to arise based on an imbalance of power—as plaintiff alleges here—the defendant must be in a position to exercise extraordinary power over a vulnerable plaintiff. For example, "[i]n the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims." *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Because insurance companies have "exclusive control over the evaluation, processing and denial of claims," they can use their monopoly power over the claims process to force claimants to accept less than fair value for their claims. *Id.* To prevent insurers from abusing that power, the Texas Supreme Court imposed a duty of good faith and fair dealing.

Texas courts are loathe to extend the duty of good faith and fair dealing based on unequal bargaining position to relationships outside of the insurance context. For example,

the Texas Supreme Court declined to apply the duty to employer-employee relationships because "the elements which make the relationship between an insurer and an insured a special one are absent in the relationship between an employer and its employees." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000). In particular, employers do not have the same bargaining leverage over employees that insurance companies have because employees may seek employment elsewhere. By contrast, when an insurance claimant "suffers a loss, he cannot simply contract with another insurance company to cover that loss." *Id.* The same analogy applies to this case; there was not an imbalance of power because Plaintiff could have hired someone other than Defendants to sell the Coin—as she proved when she hired Griffiths.

When there is not an extreme power imbalance, Texas courts recognize a duty of good faith and fair dealing only when there is also a fiduciary relationship. For example, there is a duty of good faith and fair dealing between "principal and agent, joint venturers and partners." *Hall*, 958 F.2d at 79. Each of those relationships is fiduciary. *See Hoggett*, 971 S.W.2d at 487 (relationship between principal and agent and among partners is "formal fiduciary relationship that arises as a matter of law"); *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 544 (S.D. Tex. 2011) ("Joint venturers owe a formal fiduciary duty to each other in dealings within the scope of the joint venture."). In this case, there was no formal fiduciary duty because—as explained above—there was not a principal-agent relationship between Plaintiff and Defendants. Moreover, as also explained above, there was no informal fiduciary relationship between the parties. *See Prime Prods.*, 97 S.W.3d at 638 (no "special relationship giving rise to an informal fiduciary relationship or a duty of good faith and fair dealing" for bailment contract). Accordingly, there was not a "special relationship" giving rise to a duty of good faith and fair dealing, and the Court should dismiss the claim for breach of such a duty with prejudice.

**F.      Plaintiff does not have a valid fraud claim.**

To support a claim for fraud, a plaintiff "must prove (1) the defendant made a material representation that was false; (2) the defendant knew the representation was

false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce plaintiffs to act on the representation; and (4) [the] plaintiff[] actually and justifiably relied on the representation and thereby suffered damages." *In re Estate of Kuykendall*, 206 S.W.3d 766, 770 (Tex. App.—Texarkana 2006, no pet.). A claim for fraud based on nondisclosure or concealment requires the same elements of proof "with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005).

### 1. Defendants did not make any false representations.

In her Complaint, Plaintiff alleges that she relied on two affirmative misrepresentations. (*See* Compl. ¶ 25.) Plaintiff contends that Defendants (1) "falsely represent[ed] the value of the 1893 coin . . . by claiming it was worth less than its market value of $184,000" and (2) "falsely represent[ed] that [Briggs] could secure a buyer when, in fact, he planned to convert the coin for his own gain." The evidence shows that neither of these representations was false; therefore, they cannot support a claim for fraud.

With respect to the Coin's value, Plaintiff says Briggs told her "the coin was worth about $100,000" when she asked him to sell it in 2006. (Pease Dep. at 16:7-9.) Plaintiff also testified that she believed that the Coin "was worth around 100,000" at that time. (*Id.* at 63:17-22.) Thus, for the representation to be false, the Coin would have had to be worth more than approximately $100,000 when the representation was made.

The parties in this case have stipulated that Griffiths is an expert regarding the value of rare coins. (Griffiths Dep. at 21:20-22:2; Exs. A-4 at 2, A-5 at 2.)[8] Neither party has designated any other expert to testify regarding the value of the Coin. (Exs. A-4 at 1-2, A-5

---

[8] A true and correct copy of Plaintiff's Designation of Expert and Fact Witnesses is attached as Exhibit A-4 and a true and correct copy of Defendants' First Amended Designation of Expert and Fact Witnesses is attached as Exhibit A-5 to the Declaration of Attorney Alexander Brauer attached hereto as Exhibit A and incorporated by reference.

at 1-2.).  Thus, the only evidence of the Coin's value during the relevant time period is Griffiths's testimony.

Griffiths testified that "the coin was probably worth 100 grand" in the 2005-2006 timeframe.  (Griffiths Dep. at 185:10-20.)  He also explained that the same type and grade coin sold for $80,000 with a 15% buyer's premium—making the "hammer price" $92,000—in January 2006.  (*Id.* at 65:2-12.)  Moreover, Griffiths thought the Coin was still worth approximately $100,000 to $105,000 when he purchased it from BVI in 2010.  (*See id.* at 45:23-47:10 (Griffiths "felt the value of the coin was 100 grand as a dealer" but agreed to pay an extra $5,000 "as a courtesy" because of his prior relationship with Briggs), 54:4-7 ("All I can say is that I thought the coin was worth 105 grand because I wrote a check for it."), 52:16-17 ("I think the answer is the coin was worth 105 grand.").)  In fact, when asked whether $105,000 was "a fair market value price for the coin at issue in August of 2010" based on his "30 years of experience buying and selling coins," Griffiths said that it "was more than fair."  (*Id.* at 57:16-20; *see also id.* at 46:7-11 ("if you were to ask me what my expert opinion was I think the coin was worth -- I wrote a check for 105,000; right?  So I must have thought that's what it was worth without having being sold.").)  Thus, the value of the Coin did not change while BVI was marketing it for Pease; so BVI could not have fraudulently concealed its value during that time.

Griffiths also explained why the value of the Coin increased after he purchased and resold it.  When Griffiths bought the Coin from Pease in August 2010, it did not have a "CAC" certification sticker.  (*See id.* at 65:19-22.)  Instead, Brian Hendelson—the person to whom Griffiths sold the Coin—obtained the CAC designation.  (*Id.* at 65:23-66:2.)  Griffiths explained that a CAC sticker is "important" because it "validates the grade of the coin," makes the coin "more attractive," and "opens up a broader market" for the coin, thereby making the coin "more valuable."  (*Id.* at 66:8-67:19.)  The expert testimony, therefore, not only shows that the value of the Coin was approximately $100,000 while BVI held and marketed it for Pease, it also proves that the Coin was *not* worth $184,000 during that time period.  Accordingly, Defendants did not falsely represent the value of the Coin to Pease.

Similarly, the undisputed evidence shows that Briggs did not falsely represent his ability to find a buyer for the Coin. Defendants did find a buyer for the Coin—Griffiths. Plaintiff, therefore, cannot show that Briggs made a false representation regarding his ability to find a purchaser.

### 2. Plaintiff did not rely on or suffer damages from any concealed facts.

Plaintiff alleges that Defendants failed to disclose three material facts: (1) the transfer of the Coin to Griffiths "in a non-arm's length transaction for less than market value"; (2) that Griffiths paid $105,000 for the Coin; and (3) Defendants' "true relationship with Griffiths and his companies in an effort to mislead [her] as to the true value of the 1893 coin." (Compl. ¶ 25.) At the heart of these three assertions is Plaintiff's contention that the "true value" of the Coin was $184,000, and Defendants had a duty to disclose that value. Plaintiff is mistaken on both counts.

As demonstrated above, the evidence conclusively shows the Coin was worth around $100,000 to $105,000 from the time Plaintiff gave it to BVI in 2006 until Griffiths bought it from her in 2010. Because the Coin was worth $105,000 when Plaintiff agreed to sell it and BVI sold the Coin for that amount, the true value of the Coin was not concealed.

Moreover, because the value of the Coin did not change, Defendants had no duty to disclose. As a general rule, "Texas law recognizes a duty to disclose only where a fiduciary or confidential relationship exists." *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997). Between non-fiduciaries, a duty to speak arises "when 'one party learns later that his previous affirmative statement was false or misleading.'" *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010). Here, there was no duty to speak because there was no fiduciary or confidential relationship between Plaintiff and Defendants. Likewise, there was no duty to correct or clarify a prior representation because Defendants did not make any false or misleading representations regarding the Coin's value.

Plaintiff also did not rely on the purportedly concealed facts. Plaintiff contends she detrimentally relied because she would not have agreed to sell the Coin for $105,000 if she

had known it was worth $184,000. (*See* Pease Dep. at 48:19-49:2) (Plaintiff "found out [the value of the Coin] when it was auctioned" in August 2011); Compl. ¶ 25 (Defendants did not secure Plaintiff's "advanced authorization and approval of the sale" to Griffiths).) Plaintiff admits, however, she would have sold the Coin "for $100,000 minus commission" based on Briggs's purported representation of the Coin's value because she "thought that's about what it was worth." (Pease Dep. at 63:17-22.) Because Plaintiff admits she would have sold the Coin for $100,000, there can be no detrimental reliance if the Coin was actually worth that amount. And the testimony of the parties' agreed expert regarding the value of the Coin shows that it *was* worth around $100,000. (Griffiths Dep. at 45:23-47:10, 52:16-17, 54:4-7.) Thus, Plaintiff did not suffer any damages for "the lost value" of the Coin. (Compl. ¶ 26.)

Finally, even if BVI was required to forward the money it received from Griffiths to Plaintiff—which Defendants deny—any injury Plaintiff suffered based on BVI's failure to turn over the money would sound in contract—not tort. (*See* Compl. ¶ 25 (alleged fraudulent acts include "failing to send Susan Pease the proceeds from the sale" to Griffiths).) Moreover, Defendants have offered to make Plaintiff whole by paying her the difference between the amount she has been paid for the Coin and the $105,000 sales price. (*See* Ex. A-3.) Plaintiff, however, has rejected that offer because she wants a windfall. For all of the foregoing reasons, judgment should be entered denying Plaintiff's fraud claim.

**G.** **Plaintiff's DTPA claim fails for the same reasons as her other claims.**

Plaintiff's DTPA claim is based on allegations that Defendants represented themselves to be reputable coin dealers when they were not. (Compl. ¶ 48.) Even if those allegations were true—they are not—the claim fails because Plaintiff did not suffer any injury based on the sale of the Coin to the third-party defendants.

A DTPA action is available only if a defendant's conduct causes a plaintiff to suffer "economic damages or damages for mental anguish." *See* Tex. Bus. & Comm. Code § 17.50(a). As shown above, Plaintiff has suffered no economic damages because Defendants offered to reimburse her the $54,000 difference between what she has received

to date and the $105,000 sales price of the Coin. Likewise, Plaintiff has not suffered compensable mental anguish because her symptoms do not satisfy the standard set forth by the Texas Supreme Court in *Woodruff*, 901 S.W.2d at 444.

Moreover, Plaintiff cannot recover treble damages under the DTPA because Defendants did not knowingly or intentionally sell the Coin for less than its true value. *See* Tex. Civ. Prac. & Rem. Code § 17.50(b)(1) (setting forth the requirements for recovery of treble damages). BVI sold the Coin for $105,000—the same amount the stipulated coin expert testified it was worth. (Griffiths Dep. at 52:16-17.) Thus, Defendants could not have knowingly or intentionally injured Plaintiff.

In addition, Defendants have offered Plaintiff $21,000 in attorneys' fees and costs to cover expenses incurred before Defendants offered to pay all of her economic damages. To the extent Plaintiff seeks additional attorneys' fees on her DTPA claim, the proper amount of such fees can be determined by the procedure set forth in Local Court Rule CV-7(j). Plaintiff's counsel's pursuit of additional fees does not justify going to trial in this matter.

## H.    Defendants cannot be liable for conspiracy.

It is axiomatic that a person cannot conspire with himself. *See Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996) ("To establish a civil conspiracy, a plaintiff must be able to show, *inter alia,* a meeting of the minds of two or more persons on the object or course of action."). Similarly, a corporation cannot conspire with its officers. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) ("It is a long-standing rule in this circuit that a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'"). Thus, Defendants could not have conspired with one another. Yet, Plaintiff has not sued anyone other than Briggs and BVI. (*See generally* Compl.)

Moreover, "civil conspiracy is a derivative tort" and cannot survive without an underlying tort claim. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007). As demonstrated above, Plaintiff's tort claims fail; her conspiracy claim likewise fails.

**I.**     <u>**Texas does not recognize a cause of action for unjust enrichment.**</u>

"Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest." *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 848 (N.D. Tex. 2011) (collecting cases). For example, "an action for money had and received is a doctrine applied to prevent unjust enrichment." *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App.—Corpus Christi 2006, pet. denied). Because there is no independent cause of action for unjust enrichment under Texas law, the Court should deny recovery on this "claim."

**J.**     <u>**Plaintiff's potential exemplary damages should be limited to $200,000.**</u>

To the extent any of Plaintiff's claims for which exemplary damages are available survive summary judgment, Plaintiff cannot recover more than $200,000 in exemplary damages because Texas has placed statutory limits on such awards. *See* Tex. Civ. Prac. & Rem. Code § 41.008(b). Generally, exemplary damages are limited to "the greater of" either (1) twice the amount of economic damages plus no more than $750,000 in noneconomic damages or (2) $200,000. *Id.* Here, Plaintiff's economic damages cannot exceed $54,000— the difference between the value of the Coin when she agreed to sell it and the amount she has been paid for the Coin (in actuality Plaintiff no longer has *any* economic damages as Defendants have offered her the $54,000). Moreover, Plaintiff has not suffered noneconomic damages because the mental anguish she allegedly suffered does not rise to a compensable level. Consequently, Plaintiff's potential exemplary damages are limited to the larger of $108,000—double her economic damages—or $200,000. *Id.*

A plaintiff can avoid the statutory limits on exemplary damages under certain circumstances, but Plaintiff has not shown that those circumstances apply here. The only basis Plaintiff has alleged for avoiding the cap on exemplary damages is her assertion that "Briggs' wrongful conduct constitutes a felony under Section 32.46 and Chapter 31 of the Texas Penal Code." (Compl. ¶ 64.) Although it is possible for a plaintiff to avoid the cap on exemplary damages by proving a knowing or intentional felony violation of Section 32.46,

*see* Tex. Civ. Prac. & Rem. Code § 41.008(c)(11), the evidence shows that Defendants did not violate that statute.

In relevant part, Section 32.46 prohibits using "deception"—with the "intent to defraud or harm any person"—to convince "another to sign or execute any document affecting property or service or the pecuniary interest of any person." But there is no allegation or evidence that Defendants used deception to get Plaintiff to sign or execute *any* document—let alone a document affecting her property, service, or pecuniary interest. (*See* Pease Dep. at 93:23-24 ("There was nothing on paper that I signed or he signed.").) Indeed, Plaintiff's breach of contract claim is based on an *oral* agreement. (*See* Compl. ¶ 9; Pease Dep. at 65:19 ("There was no written contract.").)

Because there is no evidence that Defendants convinced Plaintiff to sign or execute a document, the exception to the limit on exemplary damages does not apply to this case. Accordingly, if any of Plaintiff's claims survive summary judgment – which they should not – the Court should order that her potential exemplary damages are limited to $200,000 in accordance with Section 41.008(b)(2) of the Texas Civil Practice and Remedies Code.

## IV.     CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court to enter an order dismissing Plaintiff's claims with prejudice. In the alternative, Defendants request the Court to enter an order: (1) limiting Plaintiff's damages for (i) economic damages to $54,000, (ii) attorneys' fees to the amount of reasonable and necessary fees incurred on or before May 1, 2014, (iii) noneconomic damages for mental anguish to $0, and (iv) exemplary damages to $200,000. Defendants further request the Court to grant them all such other and further relief to which they may be entitled either at law or in equity.

Respectfully submitted,

*/s/ Alexander M. Brauer*
Alexander M. Brauer
Texas State Bar No. 24038780
abrauer@baileybrauer.com
Clayton E. Bailey
Texas State Bar No. 00796151
cbailey@baileybrauer.com
Benjamin L. Stewart
Texas State Bar No. 24046917
bstewart@baileybrauer.com
Paul E. Green
Texas State Bar No. 24081405
pgreen@baileybrauer.com

**BAILEY BRAUER PLLC**
Campbell Centre I
8350 N. Central Expy, Suite 935
Dallas, Texas 75206
Tel: (214) 360-7433
Fax: (214) 360-7435

**ATTORNEYS FOR DEFENDANTS AND THIRD-PARTY PLAINTIFFS CHRISTIAN BRIGGS AND BRIGGS VENTURES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system for the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys who have consented in writing to accept this notice as service of this document by electronic means:

Stevens, Baldo, Freeman & Lighty, LLP
Attn: R. Lyn Stevens
550 Fannin Street, Suite 700
Beaumont, Texas 77701
stevens@sbf-law.com

*/s/ Alexander M. Brauer*
Alexander M. Brauer